Peck, J.
Plaintiff is a wholesale distributor of perfumes, defendant Westall is a packager of perfume and defendant Danger is a manufacturing chemist. Defendants are also husband and wife.
On February 15, 1943, defendant Westall made a contract with Nanty, Inc., (represented by a Mr. Eendigs, its president and owner) whereby she acquired from Nanty the right to use the name “ Hartnell ”, the dressmaker of the Queen of England, in connection with the sale of perfume in America for eight *495 years. The agreement provided for payments to Nanty on a royalty basis. The contract also required defendant Westall to appoint a distributor for products bearing the trade name “ Hartnell ” and an addendum to the contract granted to the distributor the right to cure any default of Westall under the contract. On the same day, defendant Westall and plaintiff entered into a contract by which plaintiff became the exclusive distributor for the same territory and time of all perfumes manufactured under the designation “ Hartnell ” and bearing trade-marks connected with such products, agreeing to purchase his requirements from defendant Westall at a cost related to the retail price. This agreement contained a covenant on the part of defendant Westall that she would not attempt to sell to any other person any of these products. Plaintiff agreed to use his best efforts to promote the salé of said products at his own expense, committing himself to certain minimum sales. The contract was negotiated between plaintiff and defendant Langer, who was to manufacture the perfumes to be sold by Westall under the contract and, while Langer was not a party to the contract, it provided that he would make the deliveries required if Westall failed to do so.
The perfumes handled under the contract were made in accordance with formulae developed and owned by defendant Langer. The perfumes were sold under three trade-marks registered by defendant Westall — “ White Shoulders ”, “ Menace ” and “ Gray Diversion ”. Through plaintiff’s efforts a large business was built in these perfumes and for a period of more than two years, up to June, 1945, all went well between the three parties and they all shared in the prosperity of the business. ■
Sometime in 1944, however, defendants had demanded additional compensation for supplying perfume to plaintiff and the parties agreed that plaintiff would pay to defendant Westall, in addition to the scheduled payments, a sum amounting to 6% of sales. Defendants claim that this additional payment was for extraordinary services rendered by defendant Langer in meeting plaintiff’s greatly increased requirements. Plaintiff claims that the arrangement was merely a guise for an unlawful price increase. But the payments were made and as a result, on June 15, 1945, Nanty made demand upon Westall for royalties on these additional payments. Westall rejected the demand in a letter dated June 20, 1945, and added: “In view of your attitude and your interpretation, we also wish to consider the present contract as void and ended.” Defendants had advised plaintiff of the dispute with Nanty and of their intention to *496 reject Nanty’s demand but had not intimated any intention of canceling the contract. The first notice plaintiff received of that possibility was the advice of a fait accompli on June 21, 1945, when defendant Westall sent plaintiff a copy of her letter to Nanty and stated: ‘ ‘ This is to inform you that at the present moment there is no contract with Hartnell. In view of Mr. Eendigs’ attitude, we will have to suspend further shipments until the situation is clarified.” On the same day Nanty wrote to defendant Westall acceding to a termination of the contract.
This left plaintiff in a most precarious position. He could not fill orders on hand for perfume and his entire business was in jeopardy. Confronted with the emergency, plaintiff went directly to Eendigs, who was leaving for England the following day, and offered to make the royalty payment which Nanty had required. The offer was refused on the ground that the contract had terminated. Plaintiff succeeded on the spur of the moment, however, in making a contract directly with Nanty, by which the right to distribute “ Hartnell ” perfumes in America was given to plaintiff.
Plaintiff thereupon advised defendants that he had succeeded in maldng an agreement with Nanty ' and tried to make an arrangement with defendants for the continuation of his perfume supply. Plaintiff did not show defendants a copy of his contract with Nanty or tell them the terms thereof, a point to which defendants attach importance, and the defendants refused to make further shipments or any arrangement with plaintiff.
Plaintiff then found a new supplier of perfume which he proceeded to market under the name “ Hartnell ” with new scent names. Defendants in turn found a new distributor for their perfumes which they continued to market under the names “ White Shoulders “ Menace ” and “ Gay Diversion ”.
Plaintiff claims that the marketing by defendants of perfumes under these trade-marks is a breach of the negative covenant in the agreement between Westall and plaintiff and will cause confusion in the trade and irreparable damage to plaintiff. The complaint in two causes of action seeks an injunction against defendantsmarketing perfumes under the names “ White Shoulders ”, “ Menace ” and “ Gay Diversion ”, except through plaintiff, and damages for the alleged breach of contract. Defendant Westall counterclaims for the balance of an account owed by plaintiff for past purchases, to which plaintiff interposes the defense that certain prices charged were a violation of the Office of Price Administration law.
*497 The question raised by defendants’ appeal is whether the second cause of action and counterclaim were tried. The court wrote an opinion finding for the defendants on both the first and second causes of action and on the counterclaim.- The court withdrew this opinion and handed down a revised opinion in which it found for the defendants on the first cause of action alone, leaving the second cause of action and counterclaim undetermined on the ground that they had not been tried. We find that the second cause of action and counterclaim were not tried and, therefore, affirm the judgment in those respects, except that we think the counterclaim should be heard by the court without the intervention of a referee and that the plaintiff should not be required to post a bond to secure any judgment which may be recovered on,the counterclaim.
The court found for the defendants on the first cause of action on the ground that plaintiff had deliberately destroyed the contract under which he seeks relief by making a new contract directly with Nanty. We reach a different conclusion. If the contract was destroyed, it was by defendants’ breach before the plaintiff made his contract with Nanty. We think we are required, however, to look beyond the contract and regard the over-all equities. While there has been sharp practice on the part of both parties and we might decline equitable relief on the ground that plaintiff’s hands are not altogether clean, we are persuaded to regard the relative merits of the parties ’ positions and the relative prejudice to which they will be put by the granting or denying of an injunction. In this view, while we do not condone plaintiff’s action in making a contract directly with Nanty without advice to defendants of his intention, we are impressed with the fact that plaintiff was confronted with an emergency and driven to prompt action of self-preservation by the precipitous action of defendants, in callous disregard of plaintiff’s rights and interests, canceling the underlying contract with Nanty. Not only did plaintiff have a right under that contract to remedy any default of defendants thereunder and to maintain the contract in force, but elementary good faith required defendants to act with regard for plaintiff’s interest in the contract. Defendants ’ action was a clear breach of contract and plaintiff is entitled to his remedies both legal and equitable unless he has forfeited them by his own action.
Special Term has held that he did forfeit Ms rights, suggesting that instead of pursuing the course of making a new contract with Nanty he should have elected to treat the contract between Nanty and defendant Westall as a continuing obligation insofar *498 as his rights were concerned. True, he might have done this (we know not with what legal success) but at the risk of wrecking his business and incurring huge losses. While believing that he should have proceeded with more frankness in relation to the defendants, we cannot be unmindful of the fact that defendants had shown him so little consideration and that he was required by Mr. Bendigs’ impending departure for London to take hasty action.
What weighs with us most heavily, however, is that the business in perfumes under the names “ White Shoulders “ Menace ” and “ Gay Diversion ” was built up by plaintiff. Although defendants owned the trade-marks, the public association of the scent names was with the name “ Hartnell ”, and they became trade-marks “ connected ” with Hartnell products, as to which plaintiff had exclusive distributor’s rights under his contract with defendant Westall, and the value of the names lay entirely in a public acceptance derived from plaintiff’s efforts and expenditures. Defendants’ present marketing of perfumes under these names is bound to be confusing, a substantial interference with plaintiff’s business and an unfair appropriation of name value attributable to plaintiff’s efforts. It is not unfair to defendants to disallow their use of trade-marks, the value of which stems from plaintiff’s efforts and an association with the name “ Hartnell ”, as to which defendants surrendered all rights. It is unfair for plaintiff, who has the sole right under all the contracts involved to distribute perfumes marketed under the designation “ Hartnell ” and bearing trade-marks connected with such products, to be subjected to the competition of defendants’ use of scent names whose public acceptance lies entirely in their connection with the name “ Hartnell ” and plaintiff’s exploitation of both the “ Hartnell ” and scent names.
As to defendants’ argument that the contract between plaintiff and Westall ended for all purposes and plaintiff can no longer assert any claim under the negative covenant, and plaintiff’s argument that the contract obligations remain, we do not think it necessary to decide to what extent, if any, the contract survived. It remained performable at least to the extent of defendants’ supplying plaintiff with perfume which he could and wanted to buy from defendants and market under the trademarks in question. If terminated, it was by defendants’ act and breach. The contract, the prosecution of the contract by the parties for two years and defendants ’ breach created rights and equities we must realistically appraise. While they have their inception in the contract, they do not end in the contrast.
*499 We believe that the equities of the ease so far preponderate in plaintiff’s favor that the defendants should be enjoined from marketing perfumes under the names “ White Shoulders ” “ Menace ” and “ Gay Diversion ”, except through plaintiff, and that the judgment should be modified by granting the injunction and by striking the reference of the counterclaim to a referee and the requirement that plaintiff post a bond, and otherwise should be affirmed.
Does, Cohn, and Callahan, JJ., concur; Martin, P. J., dissents and votes to affirm insofar as the judgment dismisses the first cause of action, votes for dismissal of the second cause of action and concurs in the disposition with reference to the counterclaim.
Judgment modified by granting the injunction as indicated in opinion and by striking the reference of the counterclaim to a referee and the requirement that the plaintiff post a bond, and otherwise affirmed, with costs to the plaintiff. Settle order on motion. [See post, p. 916.]